UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DEBRA DEPIETRO, individually and on behalf of
all others similarly situated,

                           Plaintiffs,

      -against-

LEVITT LLP; STEVEN L. LEVITT;
and KAREN L. WEISS,

                           Defendants.
------------------------------------------------------------------X

FILED
CLERK
4:03 pm, Dec 14, 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

MEMORANDUM &
ORDER
23-CV-3940(GRB)(AYS)

**GARY R. BROWN, United States District Judge:**

    Valli, Kane & Vagnini, LLP ("VKV"), counsel for plaintiff, has filed a "joint motion" seeking approval of a proposed $40,000 settlement of this FLSA action as required by *Cheeks v. Freeport Pancake House Inc.*, 796 F.3d 199 (2d Cir. 2015). Docket Entry ("DE") 18. As drafted, the proposed settlement provides for an attorneys' fee award of 35% and contains an unqualified non-disparagement clause. As discussed below, the Court cannot approve the proposed settlement.

    *The Proposed Non-Disparagement Clause*

    Out of the gate, the proposed settlement fails review by providing that "Plaintiff agrees to refrain from any disparagement of any of the Releasees." DE 18-1 at 5. As a firm that purports to have substantial experience with the FLSA, plaintiff's counsel should know that "highly restrictive confidentiality provisions [are] in strong tension with the remedial purposes of the FLSA," and represent one of the fundamental concerns giving rise to the *Cheeks* review process. *Cheeks*, 796 F.3d at 206 (citation omitted). Thus, the unqualified non-disparagement clause offered here cannot withstand scrutiny. *Luna v. J.S. Held LLC*, No. 2:21-CV-03072 (JMW),

1

2023 WL 2214012, at *4 (E.D.N.Y. Feb. 24, 2023) ("Overbroad non-disparagement provisions are at odds with public policy as they have the potential to silence FLSA plaintiffs by preventing the spread of information.") (citation omitted). At a minimum, such provisions "must include a carve-out for truthful statements about plaintiffs' experience litigating their case." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Concerns relating to the chilling effect of blanket non-disclosure and non-disparagement clauses in FLSA settlement agreements apply with particular force to cases (such as this one) commenced on behalf of a putative class and/or collective action but terminating with a settlement benefiting only the named plaintiff.

Standing alone, the overbroad non-disparagement provision requires rejection of the proposed settlement.

*Reasonableness of the Requested Fees*

Furthermore, the Court must reject the proposed settlement based upon the proposed legal fees. In its motion, without citation, VKV asserts that "this District has historically limited attorneys' fees in the amount of 33.33% of the settlement fund," but then preemptively invokes the following language from the Second Circuit: "[t]here is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit." *Fisher v. SD Protection. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (citation omitted). While the quotation is accurate, counsel's selective invocation of *Fisher* does not end the inquiry. Notably, in *Fisher*, the Court of Appeals found that "the percentage of attorneys' fees cannot be the determinative factor in evaluating the reasonableness of the award," while simultaneously noting that this measure remains "helpful" in the analysis. *Id.*

And while VKV seemingly would have this Court eschew consideration of the

percentage of the recovery it is seeking, its application revolves around such concerns. Counsel seeks a flat 35% fee, noting "VKV has been approved several times for a higher 40% contingency fee in FLSA litigation," a proposition it supports with a string citation containing eight cases. DE 18 at 4.[1] In other words, it is not that counsel is advocating for something other than a percentage/proportionality analysis, it simply would like to advocate for a different percentage. *Fisher* undercuts that approach.

*Plaintiff's Purported Consent and the Retainer Agreement*

In its application, counsel represents to the Court that "Plaintiff does not dispute the 35% fee." DE 18 at 3. Plaintiff's consent to the fee, as well as the provisions of a retainer agreement, are largely irrelevant to the reasonableness calculation. *See Quispe v. Stone & Tile Inc.*, 583 F.Supp.3d 372, 380 (E.D.N.Y. 2022) (court required to conduct reasonableness analyses "even where a retainer agreement exists"). In this case, though, there are some unusual features of that consent and the retainer agreement worth noting.

Following direction to document certain representations, counsel provided several curious items. One was a letter from plaintiff dated *after* the Court's order requesting such documentation, which is of limited relevance. DE 21 at 5. The second is a text string between plaintiff (who worked as a paralegal) and the associate handling this case, discussing the

---

[1] VKV's string citation contending that it had repeatedly received court approval for a 40% contingency fee highlights yet another weakness in its application. When asked to supply "reasoned" decisions that support the contention, counsel acknowledged that half the cases cited "do not include a reasoned opinion on the 40% fee." DE 19 at 1 n.1. This invokes another problem endemic to FLSA fee litigation previously examined by the undersigned as well as a judge in the Southern District of New York: reliance by counsel upon form orders which do not reflect considered opinions by judges. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014) ("By submitting proposed orders masquerading as judicial opinions, and then citing to them in fee applications, the class action bar is in fact creating its own caselaw on the fees it is entitled to. . . . No wonder that 'caselaw' is so generous to plaintiffs' attorneys."); *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 306 (E.D.N.Y. 2015) (same). Perhaps predictably, VKV does not cite to reasoned decisions in which its request for a 40% fee was rejected as unreasonable. *See, e.g.*, *Sloben v. SDI Int'l Corp.*, No. 20-CV-04717 (PMH), 2021 WL 3617386, at *1 (S.D.N.Y. July 22, 2021) (finding "unreasonable" VKV's application for a 40% fee for a single plaintiff settlement concluded before collective action certification).

3

settlement. At one point in the conversation, the plaintiff asked, "Your boss agrees to [a] 35% cut?" *Id.* at 2. After a few messages, the associate responded with "confirmed at 35%." *Id.* at 3. The plaintiff expressed her gratitude. *Id.*

One might wonder why a plaintiff would gleefully accept a 35% contingency fee for a case resolved within a few months, without significant motion practice, mediation or court intervention, in a world where a one-third contingency is common, if not customary. A review of the retainer agreement issued by plaintiff's counsel makes this patent. That agreement provides:

> In the event of a settlement or award, the Firm is entitled to the greater of (a) 35% percent of the gross amount recovered, including any attorney fees recovered from Defendants ("Contingency Fee"); (with the Contingency Fee reduced by an amount equal to all attorneys' fees previously paid under this Agreement), (b) fees awarded by the Arbitrator or Court, (c) fees recovered from Defendant, and/or (d) the firms [sic] quantum meruit based upon the hours put into the case.

DE 20 at 2. Read literally, this provision would seem to entitle plaintiff's counsel to a 35% contingency fee *or* its billable hours, whichever is greater, even if that amount exceeds the sum ordered by the Court.[2] If defendants file a counterclaim (which happened in this case), the retainer agreement entitles the firm to "40% percent of the gross amount recovered, including any attorney fees recovered from Defendants." *Id.* at 3. This last provision is difficult to understand, as it provides that the firm would be entitled to collect from plaintiff an additional 40% of any attorneys' fee award, an amount which presumably would go to counsel in the first instance, resulting in outcomes that can only be kindly described as counterintuitive.[3]

Given these seemingly draconian provisions of the retainer agreement, plaintiff's consent

---

[2] Of course, if the firm attempted to retain a fee larger than the amount determined by this Court, that would be, well, problematic.

[3] Without burdening the record with a great deal of recreational mathematics, this provision would seem to suggest that if plaintiff was awarded $100,000 in damages and the Court ordered an additional $100,000 in attorneys' fees, VKV would collect $180,000 leaving plaintiff with $20,000—amounting to a 90% contingency.

4

to a 35% fee—to the extent such consent is relevant—seems unsurprising and holds little sway.

*Degree of Success*

So what should be the focus of an FLSA reasonableness inquiry? *Fisher* reiterates the answer:

> [T]he reasonableness of the fees does not turn on any explicit percentage cap. Instead, as noted by the Supreme Court, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). In considering the reasonableness of LLG's fees on remand, the district court shall take into account that an award of $11,170 would give Fisher complete recovery in this litigation. If Fisher were to be awarded $11,170, LLG would have achieved complete success by obtaining 100% of Fisher's possible overtime wages and statutory damages *under the FLSA and NYLL*.

948 F.3d at 606–07 (emphasis added). In a misguided effort to satisfy this standard, counsel provides the following:

> Thus, the proposed settlement agreement is both fair and reasonable under the FLSA in that Defendant has agreed to compensate Plaintiff a total sum of $40,000 from which, after $14,000 for attorneys' fees have been deducted, Plaintiff shall receive $26,000.00. *See* Ex. 1. This equates to over 100% of what Plaintiff believes she could have recovered under the FLSA at trial even after attorneys' fees.

DE 18 at 2-3. As counsel is well aware, this is not the appropriate measure. In explicating the passage set forth above, *Fisher* provides:

> Where a settlement dismisses with prejudice both FLSA and state law claims, it seems to us a district court must take into account at least the existence of the state law claims in assessing the reasonableness of the settlement, which turns in part on the total potential recovery.

948 F.3d at 607 n.12. Next, counsel attempts to distract with a hodgepodge of similarly selective metrics:

> Notably, Plaintiff is not entitled to any back pay under the FLSA and only $27,475.97 in back pay under the NYLL . . . .
>
> The total settlement also equates to 84% of Plaintiff's back pay under both the

5

> FLSA and the NYLL ($47,577.44).  After attorneys' fees, the settlement sum Plaintiff is to receive equates to 55% of her total back pay under the FLSA and the NYLL [and]
>
> . . . when using 20 minutes of off-the-clock work per day instead of 30, the settlement equates to over 100% of her NYLL back pay and 95% of her NYLL back pay after attorneys' fees.

DE 18 at 3.

There are several items that VKV fails to highlight.  One is that their estimated recoverable damages for plaintiff total over $88,000, such that the actual, post-fees recovery by plaintiff amounts to 29% of the relevant potentially-recoverable damages. Another, of course, is that attorneys' fees would be recoverable had the action proceeded, a right abandoned in the settlement.  *See* DE 18-1 at 7.  Moreover, unlike many FLSA actions filed against the most marginal of businesses, this case was brought against a law firm and several attorneys, significantly reducing common concerns about collectability.  Finally, VKV seems to forget that this action was filed as a collective and/or class action, thus the full scope of potential success is unknown to the Court.  While it seems unfair to use this last point as a quantitative measure, counsel's failure to protect the rights of potential class members by positing an unlawfully-restrictive non-disparagement clause says something about its endeavors to safeguard "the public interest in private civil rights enforcement." *See Fisher*, 948 F.3d at 604, (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999)).

Undoubtedly, counsel obtained some success in concluding this settlement.  It is just not the superlative success depicted in its papers.

*Counsel's Lodestar Crosscheck Proves Unreliable*

VKV also highlights that a "lodestar crosscheck" supports its application, positing that, based on its billing, which it asserts totals nearly $20,000, the requested 40% fee is reasonable.

6

DE 18 at 4.  Virtually all of that total consists of hours by an associate billing at $300 an hour. *Id.*  As degree of success trumps the percentage analysis, the lodestar crosscheck warrants little discussion, though one issue bears mention.

Even a superficial review of the provided time record reveals a curiosity.  On no less than five occasions, the assigned associate billed the client for sending a *single* text message.  DE 18-1 at 40-42.  Each of these instances is charged at "0.17 hours" or ten minutes, which is, presumably, the smallest unit of measure in the firm's recordkeeping system.  *See id.*  Thus, each time the associate texted the client or opposing counsel, VKV added $51 to its bill.  *Id.*  While it is possible that one *could* perseverate over a text for ten minutes, carefully wordsmithing the message, there is evidence here that undercuts such a proposition, as some of that text messaging was supplied to the Court.  *See* DE 21 at 2-3.

When the associate wrote, for example, "okay, thanks.  I'll let you know," or "confirmed at 35%," it is difficult to imagine that such a composition consumed ten minutes.  *Id.*  Even reading the client's responses, which in one case consisted solely of an emoji indicating affirmation, cannot reasonably be seen as consuming much time.  *Id.* at 2.  Given that both common experience as well as government studies[4] suggest that a text can be sent or read in as little as a few seconds, charging a client ten minutes for each text sent would appear result in flagrant overcharging.

---

[4] *See, e.g.*, NHTSA, Distracted Driving, https://www.nhtsa.gov/risky-driving/distracted-driving (last visited December 13, 2023) ("Sending or reading a text takes your eyes off the road for 5 seconds.").

7

Tallying the texting charges, which exceed a mind-blowing $750,[5] invokes another emoji:



Thus, to the extent relevant, VKV's "lodestar crosscheck" proves unpersuasive, as its billing records appear to distort reality.

**Conclusion**

Based on the foregoing, the proposed settlement agreement must be rejected. Counsel shall submit a revised agreement addressing the matters raised herein, or a joint status letter within ten days of the date of this opinion.

**SO ORDERED.**

Dated: Central Islip, New York
December 14, 2023

/s/ Gary R. Brown
HON. GARY R. BROWN
United States District Judge

---

[5] The charges include an hour and a half for unspecified "texts" with the client, invoking the specter of block billing. DE 18-1 at 39.